R. Todd Ingram (6-3910)
Grant H. Lawson (6-4260)
Metier Law Firm, LLC
4828 S. College Ave.
Fort Collins, CO 80525
(970) 377-3800
Fax: (970) 225-1476
todd@metierlaw.com
*Attorneys for Plaintiff*

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2019 MAY 13 AM 11: 53
STEPHAN HARRIS, CLERK
CASPER

# UNITED STATES DISTRICT COURT
# DISTRICT OF WYOMING

| | |
|---|---|
| BRIAN L. HOOSE, Wrongful Death Representative of Lucas L. Hoose, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL D. PETTERSEN, M.D., a Colorado Resident, OBSTETRIX MEDICAL GROUP OF COLORADO, P.C., a Colorado Corporation d.b.a. ROCKY MOUNTAIN PEDIATRIC CARDIOLOGY (Registered Trade Name), PEDIATRIX MEDICAL GROUP, INC., a Florida Corporation, MEDNAX SERVICES, INC. a Florida Corporation, and JOHN DOES 1-5, <br><br> Defendants. | Case No. 19-CV-91-SWS |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Brian Hoose, Wrongful Death Representative of Lucas L. Hoose, by and through his attorneys, and for his claims against Defendants states and alleges as follows:

Receipt # CAS002236
Summons: 6 issued
_____ not issued

1

## Parties, Venue and Jurisdiction

1. Plaintiff Brian L. Hoose is a citizen of the State of Wyoming. On January 4, 2019, Plaintiff was duly appointed the Wrongful Death Representative of Lucas L. Hoose, deceased, who was also a citizen of the State of Wyoming, in accordance with W.S. § 1-38-103. Attached hereto at Exhibit 1 is a copy of the pertinent Order.

2. Plaintiff is the proper party to institute this action in accordance with W.S. § 1-38-102.

3. Defendant Michael D. Pettersen, M.D., is a citizen of the State of Colorado whose principal professional address is 2055 High Street, Suite 255, Denver, CO 80205.

4. Defendant Obstetrix Medical Group of Colorado, P.C. (hereinafter "Obstetrix"), is a Colorado Professional Corporation, I.D. No. 19981037996, with a registered address of 1301 Concord Terrace, Sunrise, FL 33323. Defendant Obstetrix is incorporated in, and has its principal place of business in, the State of Colorado.

5. Based on information and belief, Defendant Obstetrix conducts business in Colorado and elsewhere under the Trade Name, "Rocky Mountain Pediatric Cardiology" (hereinafter "RMPC"), which is registered in Colorado under I.D. No. 20051152881.

6. To the extent that RMPC is a business entity or partnership of some kind, the instant Complaint shall be construed as naming RMPC as a Defendant in this action.

7. Defendant Pediatrix Medical Group, Inc., is Florida Corporation, S58355, whose principal place of business is in the State of Florida, and which caused the trade name RMPC to be filed on behalf of itself and Defendant Obstetrix.

8. Defendant Mednax Services, Inc., is a Florida Corporation, whose principal place of business is in the State of Florida, and which is authorized to transact business in Colorado through its wholly-owned or affiliated company, Defendant Pediatrix Medical Group.

9. Defendant John Does 1-5 are any and all persons, entities, organizations, associations or partnerships of any kind, presently unknown to undersigned counsel, on whose behalf Defendant Pettersen was acting at the time of the acts or omissions at issue in this lawsuit. It is alleged that any such Defendants are citizens of the State of Colorado or the State of Florida, with their principal places of business in those states. Prior to the filing of this lawsuit, undersigned counsel exercised due diligence and inquired into this issue with defense counsel hired by Defendant Pettersen's insurer, and was advised that a pre-suit clarification of the entities involved would not be provided.

10. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00) exclusive of interest and costs and the parties are citizens of different states. This Court has both personal jurisdiction over the parties and subject matter jurisdiction over this action.

11. Pursuant to 28 U.S.C. § 1391(b)(2), venue in the District of Wyoming is proper because the acts or omissions giving rise to the claim occurred in Wyoming.

12. Plaintiff has complied with the Wyoming Medical Review Panel Act, W.S. § 9-2-1513 et. seq. Attached hereto as Exhibit 2 is a copy of the Director's Order of Dismissal, giving Plaintiff the right to file suit in a court of competent jurisdiction.

13. Service of process has been properly accomplished on the Defendants. Each answering Defendant admits proper service of process.

### FACTS UNDERLYING COMPLAINT

14. Plaintiff hereby restates and incorporates all allegations set forth in Paragraphs 1-13 above.

15. As of July 2016, Jessica Hoose was pregnant. Baby Hoose was to be Brian Hoose's first biological child. On July 21, 2016, Jessica Hoose was seen by her Obstetrician, Dr. Susan Sheridan, in Casper, Wyoming, for a routine visit.

16. At that appointment, Dr. Sheridan performed a basic fetal ultrasound and concluded, in part, that cardiac views of Baby Hoose were difficult and that she could not adequately view cardiac outflow tracts. There were aspects of the basic ultrasound which were not what Dr. Sheridan normally observed. To be safe, therefore, Dr. Sheridan referred Ms. Hoose to a practitioner in Colorado for further evaluation.

17. On July 28, 2016, Mrs. Hoose was evaluated by Dr. Sasha Andrews at Dr. Andrews' office in Colorado. Dr. Andrews, like Dr. Sheridan, is an Obstetrician. Dr. Andrews noted that Ms. Hoose had been referred to her by Dr. Sheridan with a suspected fetal congenital anomaly.

18. Dr. Andrews performed another basic ultrasound and concluded she could not adequately visualize a four-chamber view of the fetal heart. Regarding the left ventricular outflow tract, she questioned whether it was narrowed and noted that in some views it appeared much smaller than the right side.

19. Dr. Andrews further noted that she could not adequately visualize a three-vessel trachea view, and further questioned whether the fetal aorta was smaller than the pulmonary artery. Dr. Andrews could not adequately visualize the bicaval view or aortic arch view. In sum, like Dr. Sheridan, Dr. Andrews also became concerned that Baby Hoose might have a serious congenital heart defect.

20. Dr. Andrews told Brian and Jessica Hoose that she wanted Jessica to be seen immediately by a doctor who specializes in the diagnosis and treatment of heart defects in children, a

Pediatric Cardiologist. Dr. Andrews indicated Baby Hoose might need to be born in Denver and require surgery right after birth.

21. Defendants, however, were not immediately available for a consultation, and an appointment was scheduled for Defendants' Casper outreach clinic on August 8, 2016.

22. On August 8, 2016, Mr. and Mrs. Hoose went to Defendants' outreach clinic in Casper, Wyoming, per their scheduled appointment.

23. Mr. and Mrs. Hoose were taken to an examination room where a technician performed a fetal echocardiogram.

24. Fetal echocardiography is one of the most important non-invasive diagnostic tools in cardiology; it provides information on cardiac structures, function and blood flow. The test uses sound waves that "echo" off the structures of the fetus's heart, thereby creating a picture, or echocardiogram, of the heart's interior.

25. Defendant Pettersen reviewed the echocardiogram.

26. Defendant Pettersen concluded that the echocardiogram revealed no abnormalities and no reason to suspect any abnormalities in the fetal heart.

27. Defendant Pettersen concluded that the echocardiogram ruled out potential abnormalities of the fetal heart.

28. Defendant Pettersen concluded that the echocardiogram showed adequate visualization of all important structures and functions of the fetal heart in order for him to reach his diagnostic conclusions.

29. Defendant Pettersen entered the examination room and, in light-hearted fashion, asked Mr. and Mrs. Hoose, "So why are you here?" Defendant's demeanor was surprising. Mr. and

Mrs. Hoose explained that they had been told by two prior doctors that there appeared to be something wrong with their baby's heart.

30. Defendant Pettersen told Mr. and Mrs. Hoose that he had reviewed everything and everything was okay. He said the baby could be born in Casper and that Mr. and Mrs. Hoose were "good to go."

31. Defendant Pettersen did not recommend or schedule any further follow-up with him or any other Pediatric Cardiologist.

32. Defendant Pettersen did not advise Mr. and Mrs. Hoose of any limitations to detecting heart abnormalities by echocardiogram in the prenatal setting.

33. Rather than reflecting a normal study, the echocardiogram suggested moderate right heart disproportion with small aortic valve, ascending aorta and left ventricle, and possible aortic stenosis. The study could not rule out persistent left superior vena cava, bicuspid aortic valve, pulmonary vein anomaly, or coarctation of the aorta.

34. When an echocardiogram reflects reasons to suspect a potentially life-threatening heart defect, or has not captured clear images so as to rule in or rule out such defects, additional imaging must be done.

35. Lucas Hoose was born on October 28, 2016.



36. In late February 2017, Lucas developed a common respiratory infection. He tested positive for Respiratory Syncytial Virus (RSV). Lucas' condition rapidly deteriorated. Lucas was admitted to the Wyoming Medical Center, where he suffered respiratory failure which required emergent intubation. He suffered full cardiac arrest requiring CPR and multiple rounds of resuscitative medication. He was emergently transferred to Salt Lake City Children's Hospital.

37. Upon arrival to Salt Lake City, Lucas Hoose was in critical condition. A transthoracic echocardiogram revealed underlying complex congenital heart disease including diagnoses of interrupted aortic arch, bicuspid aortic valve, and severe LV dilation and dysfunction. Despite maximum medical interventions, Lucas' condition continued to deteriorate.

38. Lucas Hoose died on February 24, 2017, in his mother's arms, at just shy of four months of age.

39. Defendants' decision not to recommend or schedule follow-up imaging after the August 8, 2016, echocardiogram was below the standard of care.

40. Defendants' diagnostic interpretation of the echocardiogram was below the standard of care.

41. Defendants' failure to advise Mr. and Mrs. Hoose of the diagnostic limitations for the August 8, 2016, echocardiogram was below the standard of care.

42. Had Defendant Pettersen complied with the duties of care he owed to the Hoose family and their unborn child, Mr. and Mrs. Hoose would have scheduled follow-up imaging and done everything possible to protect their baby's health and well-being.

43. Had follow-up imaging been performed, the congenital heart disease (CHD) in Lucas Hoose would have been further suspected and detected, and postnatal surgery would have been performed after birth to correct the CHD.

44. Had surgical intervention occurred, Lucas Hoose would have been strong enough to survive common illnesses such as RSV, and would have lived a normal, healthy life.

45. As a direct and proximate result of the negligent conduct by the Defendants, Lucas Hoose died, thereby depriving his family of the care, comfort, society, support and companionship of Lucas Hoose for the rest of their natural lives.

### FIRST CAUSE OF ACTION: NEGLIGENCE OF ALL DEFENDANTS

46. Plaintiff hereby restates and realleges the allegations in paragraphs 1-45 above.

47. At all times relevant hereto, Defendant Pettersen was an owner, agent, and/or employee acting on behalf of the other named Defendants, including any John Doe Defendants presently unknown to Plaintiff.

48. Defendant Pettersen had authority to act as the agent of all other Defendants, who were effectively engaged in the practice of medicine by and through Defendant Pettersen at all times relevant hereto.

49. All other Defendants are vicariously liable for the negligence of Defendant Pettersen.

50. Defendants had a duty to exercise the skill, diligence, and knowledge utilized by members of the profession in good standing and in the same line of practice.

51. Defendants had a duty to apply the means and methods which would reasonably be exercised and applied under similar circumstances.

52. Defendants breached the accepted standard of care as described above.

53. Defendants' failure to meet the accepted standard of care was a cause of Lucas Hoose's death.

54. Plaintiff, as Wrongful Death Representative, has suffered recoverable damages as a result of Defendants' negligence in accordance with Wyoming law.

### SECOND CAUSE OF ACTION – LACK OF INFORMED CONSENT OF ALL DEFENDANTS

55. Plaintiff hereby restates and realleges the allegations set forth in paragraphs 1-54 above.

56. At all times relevant hereto, Defendant Pettersen was acting as an owner, agent, and/or employee on behalf of the other named Defendants, including the John Doe Defendants presently unknown to Plaintiff.

57. Defendant Pettersen had authority to act as the agent of all other Defendants, who were effectively engaged in the practice of medicine by and through Defendant Pettersen at all times relevant hereto.

58. All other Defendants are vicariously liable for the negligence of Defendant Pettersen.

59. Defendants had a duty to make a reasonable and adequate disclosure of all relevant information concerning the echocardiogram and its limitations, in order to allow an informed and intelligent decision about follow-up imaging.

60. Defendants knew of the significant risks that the echocardiogram could not be relied upon to conclusively diagnose or rule out significant potential defects in Baby Hoose's heart.

61. Defendants failed to disclose those risks to Mr. and Mrs. Hoose.

62. A reasonably competent physician would have informed Mr. and Mrs. Hoose of those risks.

63. Every reasonable parent, including Mr. and Mrs. Hoose, would have chosen to schedule follow-up imaging of their son's heart had the material risks been disclosed.

64. Had Defendants disclosed those risks, Lucas Hoose would have undergone follow-up imaging and had surgery shortly after his birth to correct his heart defects, and would have lived a normal, healthy life.

65. Defendants' failure to make a reasonable and adequate disclosure of the known risks was a cause of Lucas Hoose's death.

66. Plaintiff, as Wrongful Death Representative, has suffered recoverable damages as a result of Defendants' negligence in accordance with Wyoming law.

## DAMAGES

67. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

68. In accordance with Wyoming law, Plaintiff requests that a jury fix such damages as it deems fair and just at trial, and in favor of every person for whose benefit this action is brought, including damages for the loss of probable future companionship, society, support and comfort they would have enjoyed with Lucas Hoose during their natural lives.

69. In the event of a default by any Defendant(s), Plaintiff requests that the Court enter a default judgment in favor of the Plaintiff and against the defaulting party or parties in the sum of Ten Million Dollars ($10,000,000.00), to be allocated to the entitled claimants as determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that Judgment be entered in favor of Plaintiff and against Defendants; that Plaintiff be awarded all damages that are fair and just, in an amount supported by the allegations in this Complaint and the evidence adduced at trial; and that Plaintiff be awarded costs and interest, and such other and further relief as the Court deems just and equitable.

**PLAINTIFF HEREBY DEMANDS A TRIAL TO A JURY.**

RESPECTFULLY SUBMITTED this 13 day of May 2019.

_____
R. Todd Ingram (6-3910)
Grant H. Lawson (6-4260)
Metier Law Firm, LLC
4828 S. College Ave.
Fort Collins, CO 80525
(970) 377-3800
Fax: (970) 225-1476
todd@metierlaw.com
*Attorneys for Plaintiff*

11



FILED
JAN 0 4 2019
Gen Tuma Clerk of District Court
By: Kim LeFevre, Deputy

## IN THE SEVENTH JUDICIAL DISTRICT COURT
## IN AND FOR NATRONA COUNTY, WYOMING

In the Matter of Lucas L. Hoose, Minor                CIVIL ACTION No. 105757

Deceased.

CERTIFIED COPY

### ORDER APPOINTING BRIAN L. HOOSE AS WRONGFUL DEATH PERSONAL REPRESENTATIVE PURSUANT TO W.S. §1-38-103

The petition of Brian L. Hoose seeking Appointment as the Wrongful Death Personal Representative of Lucas L. Hoose, decedent, for the purpose of investigating, pursuing, and prosecuting a wrongful death action pursuant to applicable law, having come before the Court, and for good cause appearing:

**IT IS HEREBY ORDERED** that decedent, Lucas L. Hoose, died on February 24, 2017, in Salt Lake County, State of Utah; that Lucas L. Hoose was a permanent resident of Natrona County, Wyoming at the time of his death; that this representative appointment in Wyoming is for the purpose of pursuing and prosecuting a wrongful death claim pursuant to Wyo. Stat. §1-38-101-105.

**IT IS HEREBY ORDERED** that the best interests of the potential beneficiaries as a whole will be served by the appointment of Brian L. Hoose as the wrongful death representative.

**IT IS FURTHER ORDERED** that Brian L. Hoose is hereby appointed as the Wrongful Death Personal Representative of decedent, Lucas L. Hoose, and this COURT hereby confirms and ratifies the appointment of Brian L. Hoose as the Wrongful Death Personal Representative



EXHIBIT 1

to pursue and prosecute a wrongful death claim on behalf of the proper beneficiaries and parties pursuant to Wyo. Stat. §1-38-101 et seq.

Dated this ___ of _____, 2019

Daniel L. Forgey
District Court Judge

STATE OF WYOMING, COUNTY OF NATRONA SS CERTIFICATE
I do hereby certify that the within and foregoing is a full true and correct copy of the original document which is on file or of record in my office.
Witness my hand and the SEAL of said court this ___ day of _____, 2019.
GEN TUMA, Clerk of the District Court, 7th Judicial District in and for Natrona County, Wyoming
By _____ Deputy

2

BEFORE THE MEDICAL REVIEW PANEL
OF THE STATE OF WYOMING

IN THE MATTER OF THE CLAIM OF )
BRIAN L. HOOSE, Individually and as )
Wrongful Death Representative of )
Lucas L. Hoose and Jessica Hoose, )
  )
       Claimant, )
  )
v. ) MRP 19-06
  )
Michael D. Pettersen, M.D., Rocky Mountain )
Pediatric Cardiology, Obsterix Medical Group )
Of Colorado, P.C., Pediatrix Medical Group, Inc., )
John Doe Entities 1-10, John does 1-10 *et al.*, )
  )
       Respondent. )

## ORDER OF DISMISSAL

THIS MATTER comes before the Director of the Medical Review Panel pursuant to W.S. § 9-2-1519(e) and the Medical Review Panel Rules, adopted November 21, 2005.

A claim by Brian L. Hoose, Individually and as Wrongful Death Representative of Lucas L. Hoose and Jessica Hoose, by and through their attorney, R. Todd Ingram, was filed with the Medical Review Panel on February 15, 2019.

Notice of the claim was served upon Rocky Mountain Pediatric Cardiology, Pediatrix Cardiology, Obstetrix Medical Group and Pediatrix Medical Group, Inc. on February 21, 2019, and on Michael D. Petterson, M.D. on March 7, 2019.

On April 16, 2019, Michael D. Pettersen, M.D., Rocky Mountain Pediatric Cardiology, Obsterix Medical Group Of Colorado, P.C. and Pediatrix Medical Group, Inc., by and through their counsel Lena Moeller, submitted their "WAIVER OF FURTHER MEDICAL REVIEW PANEL PROCEEDINGS BY RESPONDENTS."

The Director finds that the filing of a waiver in lieu of an answer to the claim authorizes the Director to issue an order authorizing the claimant to immediately pursue the claim in a court of competent jurisdiction, pursuant to W.S. § 9-2-1519(e).

NOW, THEREFORE, IT IS ORDERED, that the Claimant has complied with the requirements of the Wyoming Medical Review Panel Act, W.S. § 9-2- 1513 et. seq.; that no further action or proceeding shall take place with this claim, and that in particular the Claimant is not required to file the statement of an expert witness; and that the Claimant is authorized to immediately pursue the claim in a court of competent jurisdiction. Pursuant to W.S. § 9-2-1518(a), this dismissal constitutes the final decision of the Medical Review Panel,


EXHIBIT 2

and the tolling of the applicable limitation period shall begin to run again thirty (30) days after the filing of this decision.

DONE this 17th day of April, 2019.

_____
Eric A. Easton, Director   #5-2176
Medical Review Panel

## CERTIFICATE OF SERVICE

I, Eric A. Easton, do hereby certify that a true and correct copy of the foregoing ORDER OF DISMISSAL was served upon the parties by depositing a true and correct copy in the U.S. mail, postage prepaid this 17th day of April, 2017, to the following:

R. Todd Ingram
Metier Law Firm, LLC
4828 S. College Avenue
Fort Collins, WY 80525

Lena K. Moeller
Williams, Porter, Day & Neville, P.C.
P.O. Box 10700
Casper, WY 82602

_____
Eric A. Easton, Director #5-2176
Medical Review Panel